# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMELLE L. RUSSELL,

     Plaintiff

v.

WASHOE COUNTY
DETENTION FACILITY, et. al.,

     Defendants

Case No.: 3:17-cv-00181-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 25

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 25, 25-1 to 25-11.) Plaintiff filed a response. (ECF Nos. 27, 27-1, 28 (statement of disputed facts).) Defendants filed a reply. (ECF No. 30.)

After a thorough review, it is recommended that Defendants' motion be denied.

## I. BACKGROUND

Plaintiff is a pretrial detainee in custody at the Washoe County Detention Facility (WCDF) and is proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) Defendants are Christopher Shearer, Malgorzata Suchodolska-Zmak, Randy Whitmore, and Blaine Beard.

On screening, Plaintiff was allowed to proceed with a single claim of excessive force against Defendants. (ECF No. 3.) In his complaint, Plaintiff alleges that on July 3, 2016, there was a shakedown in Unit 9, and while in Plaintiff's room, Deputy Zmak took a gray bin Plaintiff

claims he was authorized to have. He alleges that he tried to respectfully tell Zmak that it was authorized, but Zmak started screaming belligerent remarks toward Plaintiff. Plaintiff then nicely asked Zmak if she could be a little more respectful. Observing this, Deputy Shearer then screamed at Plaintiff belligerently while running up the stairs towards Plaintiff. Sergeant Beard then screamed: "Take him down if he flinches wrong." Plaintiff claims this was essentially giving Deputy Shearer the go ahead to inflict all excessive force he could think of.

They attempted to place Plaintiff's arms over his head from the back, but once Deputy Shearer noticed he was not causing enough pain, he tried to slam Plaintiff to the ground. Unable to do so, Deputy Shearer called Deputy Zmak and Deputy Whitmore to help inflict excessive force. While being slammed, Plaintiff hit his face, causing never-ending pain. Shearer, Zmak and Whitmore continued the force, and tried to break Plaintiff's arms, wrists, ankles, shoulders and fingers.

After Deputy Shearer placed Plaintiff in handcuffs and while complying with his orders, Plaintiff asked Deputy Shearer if he was "getting any at home because he was being very aggressive." Deputy Shearer then tried to break Plaintiff's arms for asking the question. Shearer, Zmak and Whitmore then inflicted more pain.

Defendants move for summary judgment, arguing that they did not utilize excessive force, but instead they used only the minimal amount of force necessary to re-gain compliance of an unruly inmate who was resisting verbal commands and physically resisting the deputies.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

1    *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

2    evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

3    *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

4    of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

5    judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

6    other hand, where reasonable minds could differ on the material facts at issue, summary

7    judgment is not appropriate. *Anderson*, 477 U.S. at 250.

8       "The purpose of summary judgment is to avoid unnecessary trials when there is no

9    dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

10   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

11   of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

12   U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

13   one party must prevail as a matter of law"). In considering a motion for summary judgment, all

14   reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

15   *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

16   *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

17   nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

18   477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

19   determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

20   *Anderson*, 477 U.S. at 249.

21       In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

22   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

23   come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

# III. DISCUSSION

## A. Pretrial Detainee Excessive Force Legal Standard

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989) (citations omitted).

In determining whether force used against a pretrial detainee is excessive, the court utilizes an objective standard: the court must determine whether the force used was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). The following is a non-exhaustive list of considerations that "may bear on the reasonableness or unreasonableness of the force used:"

> The relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).

**B. Facts**

     **1. Defendants Version of Events**

     On July 3, 2016, a quarterly shakedown was performed on Unit 9. (Beard Decl., ECF No. 25-1 at 2 ¶ 4; Zmak's Incident Report, ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 4; Zmak Decl., ECF No. 25-4 ¶ 4; Whitmore Decl., ECF No. 25-5 ¶ 4.) As the cells were searched, the inmates congregated in the dayroom in the middle of the housing unit. (Beard Decl., ECF No. 25-1 at 2 ¶ 4; Shearer Decl., ECF No. 25-3 ¶ 4.) After searching Plaintiff's cell, Deputy Zmak directed Plaintiff to return to his cell, and he responded by strutting at an extremely slow pace. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) Zmak instructed Plaintiff again to return to his cell, and he yelled, "I am going back to my cell," and continued to slowly walk up the stairs while looking over his shoulder at Deputy Zmak. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.)

     At the time, Deputy Zmak was in training and Deputy Shearer was her field training officer. (Shearer Decl., ECF No. 25-3 ¶ 4.)  Due to Plaintiff's disrespectful tone and attitude, Deputy Shearer directed Plaintiff to stop outside his cell and face the wall. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) Plaintiff ignored Deputy Shearer, looked back over his shoulder, and walked into his cell. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) As a result, Deputy Shearer ascended the stairs and directed Plaintiff to come back out of his cell and face the wall. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) Plaintiff complied. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) Deputy Shearer applied handcuffs along with Deputy Whitmore, who was also in training. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 5.) Deputy Whitmore then escorted Plaintiff back downstairs to the deputy station. (ECF No. 25-2; Shearer

Decl., ECF No. 25-3 ¶ 5.) Plaintiff made a flippant comment to Deputy Shearer along the lines of: "What? Are you not getting any at home?" (Shearer Decl., ECF No. 25-3 ¶ 5.)

A short time later, Deputy Shearer came back downstairs and took over for Deputy Whitmore. (Shearer Decl., ECF No. 25-3 ¶ 6.) Deputy Shearer and Deputy Zmak began to escort Plaintiff out of Unit 9. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 7.) Deputy Shearer was walking behind Plaintiff, holding the chain of the handcuffs. (Shearer Decl., ECF No. 25-3 ¶ 7.) At that point, Plaintiff started to tense up, pulled his shoulders and hands upwards, clenched his fists, and quickly leaned forward and to the right. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 7; Whitmore Decl., ECF No. 25-5 ¶ 7.) Deputy Shearer believed Plaintiff was trying to get away from him. (Shearer Decl., ECF No. 25-3 ¶ 7.) Deputy Shearer instructed Plaintiff to stop tensing up. (Beard Decl., ECF No. 25-1 at 3 ¶ 5; ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 7.) Deputy Shearer then pulled back on the handcuffs to stop Plaintiff's forward movement, grasped Plaintiff's left arm and turned him to the left. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 7.) Deputy Shearer placed Plaintiff with his chest against the railing behind the deputy station. (Beard Decl., ECF No. 25-1 at 3 ¶ 5; ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 7.) Plaintiff again began to physically resist and tried to pull away from Shearer's grasp. (Beard Decl., ECF No. 25-1 at 3 ¶ 5; ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶.)

Lieutenant Beard (who was then a sergeant) was at the deputy station at the time. (Beard Decl., ECF No. 25-1 at 3 ¶ 5; Shearer Decl., ECF No. 25-3 ¶ 7.) Lieutenant Beard directed that if Plaintiff kept resisting, he should be put on the ground. (Beard Decl., ECF No. 25-1 at 3 ¶ 6; Shearer Decl., ECF No. 25-3 ¶ 7.) Deputy Zmak took control of Plaintiff's left arm and Deputy Whitmore took control of his right arm. Plaintiff continued to try and pull away. (Beard Decl., ECF No. 25-1 at 3 ¶ 7; ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 8.) Deputy Shearer and

another deputy—Deputy Lyford—attempted to take control of Plaintiff's legs to try and place leg restraints on him (which is standard protocol when an inmate becomes physically resistant during transport). (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 8.) Plaintiff continued to refuse verbal commands and physically resisted by pulling his legs away so that the deputies could not gain control. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 8.) The deputies then decided to lower Plaintiff into a prone position on the ground so they could properly and safely secure the leg restraints. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 8.)

Once Deputy Shearer and Deputy Lyford gained control of Plaintiff's legs, they lowered him into the prone position. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 9; Whitmore Decl., ECF No. 25-5 ¶ 7.) They were fairly close to the railing, and Lieutenant Beard instructed them along the lines of: "Be careful. Don't hit his face on the railing" and/or "watch his head." (Beard Decl., ECF No. 25-1 at 3 ¶ 7; Shearer Decl., ECF No. 25-3 ¶ 9.) Plaintiff was lowered into the prone position, but was not body slammed or dropped and his body made no significant impact with the floor. (Beard Decl., ECF No. 25-1 at 43 ¶ 8; ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 9; Zmak Decl., ECF No. 25-4 ¶ 8.) Neither Lieutenant Beard nor the deputies witnessed Plaintiff's face hit the railing. (Beard Decl., ECF No. 25-1 at 4 ¶ 8; Shearer Decl., ECF No. 25-3 ¶ 9; Zmak Decl., ECF No. 25-4 ¶ 8.)

Once on the ground, Deputy Lyford secured Plaintiff's leg restraints. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 10; Whitmore Decl., ECF No. 25-5 ¶ 8.) Then, Deputies Shearer, Zmak, Whitmore, Lyford, and Olsen escorted him to a segregated housing unit and placed him in a cell without further incident. (ECF No. 25-2; Shearer Decl., ECF No. 25-3 ¶ 10; Whitmore Decl., ECF No. 25-5 ¶ 8.) He was examined by Nurse Sandra Boxx, who medically cleared him

for placement in administrative segregation, noting no noticeable injuries and that he did not complain of any pain or injury. (Boxx Decl., ECF No. 25-6.)

### 2. Plaintiff's Version of Events

In his own declaration filed in support of his response to Defendants' motion, Plaintiff states that on July 3, 2016, there was a quarterly unit shakedown. (ECF No. 27-1 at 2.) After Plaintiff's cell was searched, he was told to go back to his cell and lockdown. (*Id.*) While going back to his cell, he noticed that Zmak had his extra bin and a t-shirt—items he was authorized to have. (*Id.*) Since Zmak was in training, he assumed she did not know he was authorized to have those items, and so he told her as much and asked for the items back. (*Id.*) He claims that Zmak responded by yelling and cursing, denying him access to his belongings, and telling him to go to his cell. (*Id.*) Plaintiff asked Zmak to show some respect and to stop yelling and cursing at him. (*Id.*) By the time he reached his cell, Shearer screamed at him to face the wall and to put his hands behind his back. (*Id.*) Plaintiff states that he came out and complied, and was handcuffed by Shearer. (*Id.*) Shearer then started to walk him down the stairs, and Beard yelled: "Take him down hard if he even flinches wrong." (*Id.*) Plaintiff replied: "You must not be getting any at home," which made Shearer yank down on his cuffs, then upward causing Plaintiff to lean forward and "almost fall" on his face. (*Id.*)

To get his balance back, Plaintiff placed his right foot in front of himself and then stumbled into the railing behind the deputy station. (*Id.* at 3.) This caused the other defendants to think Plaintiff was resisting, and they came over to assist. (*Id.*) At this point, he claims he was taken down hard. (*Id.*) Once on the ground, Plaintiff claims Defendants bent his wrist and ankles causing him to yell out. (*Id.*) They proceeded to place knees into his shoulder blades and continued to inflict pain. (*Id.*)

1  Plaintiff claims that when the nurse went through the medical procedure, he was so

2  distraught he did not hear what she was saying, and that is why he did not say anything about his

3  injuries until a little while later. (*Id*.)

4  Plaintiff maintains that he did not resist or show any form of threat. (*Id*.) He includes as

5  an exhibit a grievance he submitted regarding the incident where he also said that he was not

6  tensing up, resisting or turning towards the officers. In that grievance, he claimed that his jaw hit

7  the pole, and as a result he suffered a broken mandible that could not be reconstructed. (ECF No.

8  27 at 1, 14.)

9  **C. Analysis**

10  Defendants maintain that they utilized minimal force to obtain compliance of a

11  disrespectful, unruly and resisting detainee that they were attempting to escort out of the housing

12  unit. They present evidence that Plaintiff ignored verbal commands and physically resisted

13  efforts to escort him out of the unit which were interpreted by the officers as an attempt by

14  Plaintiff to get away or to fight. This caused Lieutenant Beard to become concerned for the

15  deputies' safety since Plaintiff was a significantly larger person than the deputies. (Beard Decl.,

16  ECF No. 25-1 ¶ 6.) This is when Lieutenant Beard directed that if Plaintiff kept resisting, the

17  deputies should put him on the ground. (Beard Decl., ECF No. 25-1 ¶ 6; Shearer Decl., ECF No.

18  25-3 ¶ 7.) Lieutenant Beard explains that this is because in a prone position, the inmate is

19  prevented from posing a realistic threat to staff members and it is common practice for the safe

20  application of leg restraints. (Beard Decl., ECF No. 25-1 ¶ 6.) Plaintiff continued to resist, and

21  Defendants claim that he was taken to the prone position using minimal force and without

22  incident. According to Defendants, Plaintiff did not hit the railing, and did not complain of or

23  exhibit any injuries in connection with the incident.

1

2        Plaintiff, on the other hand, submits a declaration that differs significantly from the

3 allegations in his complaint. In the complaint, Plaintiff alleges that Shearer tried to slam Plaintiff

4 to the ground, and that Shearer, Zmak and Whitmore tried to break his arms, wrists, ankles,

5 shoulders and fingers. In contrast, his declaration does not contend that the Defendants tried to

6 slam him on the ground or break his limbs. When he stated to Shearer that he must not "be

7 getting any at home," the complaint alleges that Shearer tried to break his arms. The declaration,

8 on the other hand, states that when he made that comment to Shearer, it resulted in Shearer

9 yanking downward and upward on his handcuffs causing Plaintiff to learn forward and "*almost*

10 *fall on his face.*" Then, when he was trying to regain his balance, he stumbled into the railing,

11 which he says must have caused the other deputies to think he was resisting. At that point, they

12 came over to aid Shearer, and Plaintiff claims he was taken down hard. Once on the ground,

13 Plaintiff claims his wrists and ankles were bent, causing him to yell out, and they placed knees

14 into his shoulder blades and continued to inflict pain.

15        While Plaintiff states in his declaration that he was not a threat and was not resisting, at

16 the same time he admits that the balance issues he was having must have caused Defendants to

17 think he was resisting.

18        Regarding the extent of injury, Plaintiff's declaration claims that he was too distraught

19 when he met with Nurse Boxx to mention his injuries, but he provides no evidence of what

20 injuries he actually suffered. Plaintiff's grievance regarding the incident did state that he suffered

21 a broken mandible that could not be reconstructed as a result of the incident, but Plaintiff does

22 not state anything about suffering a broken mandible in his declaration. Nor does he provide any

23 medical records to substantiate this statement made in the grievance. In fact, while Plaintiff

alleged in his complaint that when Shearer, Whitmore and Zmak were slamming him into the ground, he hit his face (which caused never-ending pain), his declaration states that he "almost" fell on his face.

While Plaintiff did not present probative evidence as to his injuries, the extent of the injuries is only one factor the court considers in determining whether the force utilized was objectively reasonable. As the Supreme Court pointed out in the Eighth Amendment excessive force context: "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an Eighth Amendment claim merely because he has the good fortune to escape without serious injury." *Id*. If Plaintiff proves that the force utilized to take him to the ground was objectively unreasonable, but is unable to prove he suffered any injuries or only modest injuries as a result, his damages will be limited accordingly. *See id*. at 40.

The court is left with Plaintiff's statement that Lieutenant Beard told the officers to "take him down if he even flinches wrong," and his claim that Defendants bent his wrists and ankles causing him to yell out, and then placed their knees into his shoulder blades to continue to inflict pain.

It is admittedly a close call as to whether this is sufficient to create a genuine dispute of material fact as to whether the force utilized was objectively unreasonable. While Plaintiff's statements in his declaration are significantly tempered when compared to the allegations of the complaint, he still claims that he was taken down hard and his wrists and ankles were bent such that it caused him to yell out in pain, and then knees were placed into his shoulder blades which caused him further pain. This is in contrast to the statements of Defendants that Plaintiff was

1  brought to the prone position, minimal force was utilized, and the maneuver was accomplished

2  without incident.

3      The court reiterates that it is required to view the facts and draw all inferences in the

4  light most favorable to Plaintiff. The court is not permitted to weigh the evidence. In addition,

5  even though the changes between the allegations of the complaint and the declaration he now

6  presents raise a question as to Plaintiff's credibility, the court is not permitted to make credibility

7  determinations in deciding a summary judgment motion. These are functions reserved for the

8  jury.

9      The court is also guided by the Ninth Circuit's admonishment that excessive force cases

10 require a fact-specific inquiry, and therefore, such cases are rarely determined as a matter of law.

11 *See Green v. City and County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quotation

12 marks and citations omitted); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("we

13 have held on many occasions that summary judgment or judgment as a matter of law in

14 excessive force cases should be granted sparingly").

15     With these principles in mind, the court finds that reasonable minds could differ as to

16 whether the force used to take Plaintiff to the ground was objectively reasonable or

17 unreasonable. Therefore, Defendants' motion for summary judgment should be denied.

## IV. RECOMMENDATION

19     IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

20 Defendants' motion for summary judgment (ECF No. 25).

21     The parties should be aware of the following:

22     1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

23 this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 27, 2019

_____
William G. Cobb
United States Magistrate Judge